NOT DESIGNATED FOR PUBLICATION

Nos. 122,226
122,227
122,228

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTIAN R. RESTO-ISAAC,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed June 11, 2021.
Appeal dismissed.

*Jacob Nowak*, of Kansas Appellate Defender Office. for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before POWELL, P.J., GREEN and HILL, JJ.

PER CURIAM: In the following consolidated cases, the district court sentenced
Christian Resto-Isaac to 17 months in prison in No. 16CR504, consecutive to 34 months
in prison in No. 16CR1138 and 122 months in prison in No. 16CR1184. This resulted in
a combined prison term of 173 months. Nevertheless, the district court granted Resto-
Isaac a downward dispositional departure and placed him on probation.

1

The district court, however, later revoked Resto-Isaac's probation after he committed several probation violations. In doing so, the district court ordered Resto-Isaac to serve his underlying sentence in each case but modified the sentence in each case by running the sentence in each case concurrently rather than consecutively. This resulted in a controlling prison term of 122 months.

On appeal, Resto-Isaac appeals the modification of his underlying prison sentence in 16CR1184, asserting that the district court miscalculated his criminal history score when imposing this modified sentence. We consider and reject this argument because when the district court ran the previously mentioned sentences concurrent with each other, Resto-Isaac received a less severe sentence, that is, a lesser sentence. Because the district court imposed a less severe sentence on Resto-Isaac after revoking his probation, we lack jurisdiction to consider Resto-Isaac's argument for the reasons set forth below. As a result, we dismiss this appeal.

FACTS

Although his cases were never consolidated, in Sedgwick County Nos. 16CR504, 16CR1138, and 16CR1184, Resto-Isaac entered into a universal plea agreement with the State. Under this plea agreement, Resto-Isaac agreed to do the following:  (1) In 16CR504, he would plead no contest to two counts of criminal threat; (2) in 16CR1138, he would plead no contest to one count of burglary and one count of theft; and (3) in 16CR1184, he would plead no contest to two counts of aggravated burglary, one count of burglary, and one count of theft. In exchange for his no-contest pleas, the State agreed to not charge Resto-Isaac with burglary in a different case as well as support Resto-Isaac's dispositional departure motion should he make one at sentencing.

On July 27, 2016, Resto-Isaac pleaded no contest to all of his charges in 16CR504, 16CR1138, and 16CR1184 in accordance with his plea agreement with the State.

2

Afterwards, on October 20, 2016, the district court granted Resto-Isaac's motion for a dispositional departure to probation in all of his cases.

In 16CR504, for his two criminal threat convictions, the district court sentenced Resto-Isaac to a controlling term of 12 months' probation with an underlying controlling term of 17 months' imprisonment followed by 12 months' postrelease supervision. In 16CR1138, for his burglary and theft convictions, the district court sentenced Resto-Isaac to a controlling term of 12 months' probation with an underlying controlling term of 34 months' imprisonment followed by 12 months' postrelease supervision. Also, in 16CR1184, for his two aggravated burglary, burglary, and theft convictions, the district court sentenced Resto-Isaac to a controlling term of 36 months' probation with an underlying controlling term of 122 months' imprisonment followed by 24 months' postrelease supervision. For each of his cases, the district court ordered Resto-Isaac's sentences to run consecutively.

Over the next three years, Resto-Isaac struggled on probation. During this time, he received three intermediate sanctions in each of his cases. Then, on November 8, 2019, the district court revoked Resto-Isaac's probation in 16CR504, 16CR1138, and 16CR1184. In doing so, although the district court modified Resto-Isaac's original underlying prison sentences in 16CR504, 16CR1138, and 16CR1184 to run concurrently, it otherwise imposed the same prison sentences on Resto-Isaac as it did when it initially sentenced him. Thus, for all of his cases, the district court imposed a modified controlling term of 122 months' imprisonment followed by 12 months' postrelease supervision.

Resto-Isaac appeals his modified sentence in 16CR1184.

ANALYSIS

On October 25, 2019, our Supreme Court issued its decision in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020). There, our Supreme Court held that "[t]he portion of K.S.A. 2018 Supp. 21-5415(a)(1) allowing for a conviction if a threat of violence is made in reckless disregard for causing fear is unconstitutionally overbroad because it punishes conduct that may be constitutionally protected under some circumstances." 310 Kan. 800, Syl. ¶ 3.

In his appellant's brief, Resto-Isaac does not challenge his two criminal threat convictions in 16CR504 as unconstitutional under *Boettger*. Instead, for the first time on appeal, he contends that the modified sentence the district court imposed on him following the revocation of his probation in 16CR1184 was illegal as meant under K.S.A. 2020 Supp. 22-3504(a) based on our Supreme Court's holding in *Boettger*. According to Resto-Isaac, because our Supreme Court decided *Boettger* between his original sentencing in October 2016 and his modified sentencing following his probation revocation in November 2019, the district court could no longer legally consider his two criminal threat convictions from 16CR504 while calculating his criminal history score in 16CR1184. He notes that if the district court had not used his two criminal threat convictions from 16CR504 to calculate his criminal history score, his criminal history score would have been a B instead of an A. See also K.S.A. 2020 Supp. 21-6809 (discussing how to calculate a defendant's criminal history score). Thus, Resto-Isaac argues that we should vacate his sentence in 16CR1184 and remand for resentencing in that case without the inclusion of his 16CR504 criminal threat convictions in his criminal history score.

The State responds that Resto-Isaac's argument is meritless. In effect, the State argues that we lack jurisdiction over Resto-Isaac's appeal because he seeks to challenge his sentence in 16CR1184 following an appeal from the revocation of his probation. The

State contends that if Resto-Isaac wanted to challenge the district court's calculation of his criminal history score in 16CR1184, he needed to do so after the district court originally sentenced him back in October 2016 by filing a direct appeal. Alternatively, the State argues that the district court properly sentenced Resto-Isaac in 16CR1184 because our Supreme Court's holding in *Boettger* constituted a change in the law that Resto-Isaac could not receive the benefit of following the revocation of his probation. In making this latter argument, the State emphasizes that our Supreme Court had not decided *Boettger* when the district court originally sentenced Resto-Isaac back in October 2016.

In his reply brief, Resto-Isaac counters the State's contention that his sentencing challenge is not properly before us. Although Resto-Isaac cited K.S.A. 22-3504—the correction of an illegal sentence statute—in his appellant's brief—Resto-Isaac asserts in his reply brief that he is not making his challenge under K.S.A. 22-3504. Instead, he contends that he is raising his sentencing challenge in "a direct appeal from his revocation of his probation and imposition of [his modified] sentence." Based on this assertion, he argues that his sentencing challenge is properly before us as a direct appeal.

So in their respective briefs, Resto-Isaac and the State ask us to answer two interrelated questions: Do we have jurisdiction to consider challenges to the district court's modification of a defendant's sentence following the revocation of that defendant's probation? And if so, what law controls the district court's modification of the defendant's prison sentence following probation revocation?

Whether jurisdiction exists constitutes a question of law over which we exercise unlimited review. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). Whether a sentence is illegal as meant under K.S.A. 22-3504 is also a question of law over which we exercise unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Likewise, interpretation of the revised Kansas Sentencing Guidelines Act (KSGA)

constitutes a question of law over which we exercise unlimited review. *State v. Murdock*, 309 Kan. 585, 590, 439 P.3d 307 (2019).

"The right to appeal is purely a statutory right." *State v. Ehrlich*, 286 Kan. 923, 924, 189 P.3d 491 (2008). Absent some exception, a defendant has "14 days after the judgment of the district court to appeal." K.S.A. 2020 Supp. 22-3608(c). "'The final judgment in a criminal case is the sentence.'" *State v. Weekes*, 308 Kan. 1245, 1249, 427 P.3d 861 (2018).

K.S.A. 2020 Supp. 22-3504(a), though, allows defendants to make challenges to the legality of their sentences more than 14 days after their sentencing, and it provides that "[t]he court may correct an illegal sentence at any time while the defendant is serving such sentence." Our Supreme Court has interpreted the preceding provision to mean that "where there has been a misclassification of a prior conviction, the resulting sentence is illegal and can be corrected at any time." *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). In *Dickey*, this allowed Dickey to challenge whether the district court used the wrong criminal history score when it ordered him to serve his original underlying prison sentences following the revocation of his probation. 305 Kan. at 219-20.

Turning to the probation revocation statutes at issue in this case, we note that K.S.A. 2015 Supp. 22-3716(c)(1)(E), which was in effect when Resto-Isaac committed his underlying crimes in 16CR1184, provides that on revoking a defendant's probation, the district court may order a defendant "to serve the sentence imposed, or any lesser sentence." Therefore, via K.S.A. 2015 Supp. 22-3716(c)(1)(E), the district court has the authority to change a defendant's original underlying sentence on revoking that defendant's probation. But the plain language of K.S.A. 2015 Supp. 22-3716(c)(1)(E) does not state that the district court may impose *any* sentence on the defendant after revoking that defendant's probation. Instead, under K.S.A. 2015 Supp. 22-3716(c)(1)(E)'s plain language, the district court has just two options after revoking a defendant's

6

probation: (1) it can impose the defendant's original underlying sentence or (2) it can impose any sentence lesser than the defendant's original underlying sentence.

Previously, our Supreme Court has held that Kansas appellate courts may consider an appeal where the defendant alleges that the district court misunderstood its statutory authority to impose a lesser sentence after revoking his or her probation. *State v. Ardry*, 295 Kan. 733, 736, 286 P.3d 207 (2012). In *Ardry*, this allowed Ardry to successfully appeal the district court's errant ruling that certain statutory restrictions limited its authority to impose a lesser sentence under the abuse of discretion standard. 295 Kan. at 736. Still, in most circumstances, Kansas appellate courts lack jurisdiction to consider a defendant's sentencing challenge when the defendant raises this challenge following an appeal from the revocation of his or her probation.

For instance, in *Wilkerson v. State*, 38 Kan. App. 2d 732, 734, 171 P.3d 671 (2007), we explained that "[t]he appeal of a probation revocation may properly be considered a 'direct appeal' thereof, but it may not raise issues related to the original conviction or sentence." Similarly, in *Ehrlich*, when considering an earlier version of K.S.A. 2015 Supp. 22-3716(c)(1)(E), our Supreme Court held that the disputed language "does not authorize a district court to impose an entirely new sentence. It instead allows a downward modification of the original sentence." 286 Kan. 923, Syl. ¶ 5. In *Ehrlich*, this meant that Ehrlich could not appeal the district court's original sentencing order requiring him to pay a Board of Indigents' Defense Services (BIDS) application fee following the revocation of his probation. 286 Kan. at 926. Our Supreme Court explained that if Ehrlich wanted to appeal the district court's BIDS application fee order, he needed to do so before his deadline to directly appeal his sentence under K.S.A. 22-3608(c) had expired. 286 Kan. at 926. Also, in *State v. McKnight*, 292 Kan. 776, 782, 257 P.3d 339 (2011), our Supreme Court held that appellate courts lack jurisdiction to consider the district court's imposition of a lesser sentence on the defendant under K.S.A. 22-3504.

Of significance, in *McKnight*, the district court had wrongly concluded that it could not impose a term of postrelease supervision on McKnight after revoking his probation. Thus, after revoking McKnight's probation, the district court modified McKnight's original underlying sentence so that once he completed his prison sentence, he would not have to serve any time on postrelease supervision. But on the State's motion to correct an illegal sentence under K.S.A. 22-3504, the district court amended McKnight's sentence so he would serve a term of postrelease supervision once he completed his prison sentence. McKnight appealed the district court's decision to grant the State's motion to correct an illegal sentence to us. In that appeal, we rejected McKnight's argument that the district court lacked jurisdiction to amend his sentence under K.S.A. 22-3504.

But our Supreme Court agreed with McKnight's argument, reversing both this court and the district court because it determined that the district court lacked jurisdiction to consider the State's illegal sentence motion under the plain language of K.S.A. 22-3716(b):

> "In cases where a sentence was announced, but probation was granted, the court 'may require that defendant serve the sentence imposed, or any lesser sentence.' The phrase 'any lesser sentence' is not defined, and the 'lesser sentence' is not limited to that which might have been imposed at sentencing. A plain language reading of K.S.A. 22-3716(b) gives the trial court the authority to impose any sentence less than that originally imposed. Such a 'lesser sentence' might be a shorter prison sentence, a shorter term of postrelease supervision, or any combination thereof.'
>
> . . . .
>
> "At McKnight's probation revocation hearing, the trial court imposed a legal lesser sentence of 22 months' incarceration with no postrelease supervision. Whether the trial court mistakenly imposed no postrelease supervision due to a misunderstanding of [a different subsection of the probation revocation statute] is not relevant. 'A sentence is effective on pronouncement from the bench, regardless of the court's intent at the time the sentence is pronounced.' The trial court imposed a legal sentence; therefore, the court did

8

not have jurisdiction to later modify that sentence. [Citations omitted.]" 292 Kan. at 782-83.

As a result, in *McKnight*, our Supreme Court made three significant holdings: *First*, the *McKnight* court explicitly held that because the language "any lesser sentence" is so broad, when the district court imposes a lesser sentence on a defendant after revoking that defendant's probation, the district court's lesser sentence is legal as long as it is less severe than the underlying sentence the district court originally imposed. 292 Kan. at 782. *Second*, in reaching the preceding explicit holding, the *McKnight* court also implicitly held that when a district court imposes a lesser sentence on a defendant after revoking that defendant's probation, the district court is no longer bound by the KSGA provisions it was initially bound by when it first sentenced the defendant to probation and imposed the defendant's underlying sentence. Indeed, this is the only rational interpretation of our Supreme Court's explicit holding in *McKnight* because all presumptive KSGA prison sentences have corresponding presumptive KSGA postrelease supervision sentences, meaning a district court must impose a term of postrelease supervision on a defendant at that defendant's initial sentencing. See K.S.A. 2020 Supp. 21-6804(e)(2)(C). More importantly, in *Ardry*, our Supreme Court recognized this implicit holding when it noted that under *McKnight's* precedent, the lesser sentence the district court imposes on a defendant after revoking that defendant's probation need not even be a presumptive or a legal sentence under the KSGA. 295 Kan. at 736. *Third*, based on the preceding explicit and implicit holdings, the *McKnight* court further held that as long as the district court imposed a less severe sentence on a defendant after revoking that defendant's probation in accordance with the disputed provision's plain language, Kansas courts lack jurisdiction to consider the legality of the defendant's lesser sentence under K.S.A. 22-3504. See 292 Kan. at 782-83; see also *State v. Sandoval*, 308 Kan. 960, 964, 425 P.3d 365 (2018) (affirming its *McKnight* decision while distinguishing *McKnight* from the facts of Sandoval's case).

9

For example, unlike *McKnight*, the district judge in *Sandoval* specifically rejected Sandoval's request to modify his original sentence. Also, the district court did not sentence Sandoval anew. Instead, the district judge required Sandoval serve his original sentence, leaving his original postrelease supervision term intact. Because his original postrelease supervision term of 24 months did not conform to the mandatory lifetime supervision term required for Sandoval's case, this postrelease supervision term was subject to correction by a later motion of the State under K.S.A. 22-3504(1). 308 Kan. at 961, 964-65.

Thus, *Sandoval* stands in stark contrast to *McKnight* because the *Sandoval* court held that "after revoking a criminal defendant's probation," if the district judge "requires the defendant to serve the original sentence, any original illegality continues to exist and is subject to challenge or correction under K.S.A. 22-3504." 308 Kan. at 960. As stated previously, the district court in *Sandoval* required Sandoval to serve his original sentence and thus is distinguishable from *McKnight* where the district judge attempted to modify McKnight's prison sentence after the court revoked his probation.

Returning to the case at hand, we once again note that Resto-Isaac counters the State's contention that we lack jurisdiction over his appeal by labeling his appeal as a direct appeal from his sentencing modification instead of an appeal brought under K.S.A. 22-3504. In his reply brief, Resto-Isaac suggests that our Supreme Court's decision in *State v. Clapp*, 308 Kan. 976, 980, 425 P.3d 605 (2018), supports that he can "directly appeal" the modification of his sentence following the revocation of his probation. But Resto-Isaac's case is clearly distinguishable from the *Clapp* decision, which involved a defendant's argument that the district court failed to comply with our state's probation revocation statute by not imposing a certain intermediate sanction before revoking his probation. 308 Kan. at 980. It is settled law that we can review a defendant's challenge to the revocation of his or her probation. See *State v. Tripp*, 237 Kan. 244, 246, 699 P.2d 33 (1985) (explaining that a defendant may appeal from the revocation of his or her

10

probation but cannot raise challenges in such appeal to his or her original conviction). Thus, despite Resto-Isaac's suggestion to the contrary, the *Clapp* decision does not support his argument that his current appeal constitutes a direct appeal.

In any case, our precedent in *Wilkerson* establishes that for jurisdiction purposes, it does not matter whether a defendant labels his or her appeal as a direct appeal from probation revocation. Instead, because we lack jurisdiction to consider a defendant's challenge to his or her original conviction or sentence when first raised on appeal from his or her probation revocation, what matters is whether the defendant seeks to raise an issue related to his or her original conviction or sentence. 38 Kan. App. 2d at 734.

Resto-Isaac seeks to avoid this precedent by alleging that the law in effect when the district court revoked his probation and imposed its lesser sentence on him in accordance with K.S.A. 2015 Supp. 22-3716(c)(1)(E) controlled the district court's calculation of his criminal history score as well. To review, Resto-Isaac's sole underlying argument on appeal is that following his probation revocation, the district court used the wrong criminal history score when it modified his sentence in 16CR1184 to run concurrent with his sentences in 16CR504 and 16CR1138. Resto-Isaac believes that based on *Boettger*'s change in the law, the district court had to recalculate his criminal history score to exclude his two criminal threat convictions from 16CR504 when it made the preceding modification. But the plain language of K.S.A. 2015 Supp. 22-3716(c)(1)(E), our Supreme Court's holdings in *McKnight*, and our Supreme Court's holdings in *Ehrlich* wholly undermine this argument.

Once more, K.S.A. 2015 Supp. 22-3716(c)(1)(E)'s plain language gives the district court two options regarding a defendant's sentence following the revocation of a defendant's probation:  (1) it can impose the defendant's original underlying sentence or (2) it can impose "any lesser sentence" than the defendant's original underlying sentence. Yet, nothing within K.S.A. 2015 Supp. 22-3716(c)(1)(E)'s plain language supports that

11

the district court has discretion to recalculate the defendant's criminal history score, see K.S.A. 2020 Supp. 21-6809, when imposing a lesser sentence. Also, our Supreme Court's explicit and implicit holdings in *McKnight* do not indicate that a defendant is entitled to recalculation of his or her criminal history score should the district court invoke its statutory authority to impose a lesser sentence on a defendant after revoking that defendant's probation. Instead, *McKnight*'s precedent supports that as long as the district court imposes a sentence that is less severe than the original underlying sentence it imposed on the defendant, the district court's lesser sentence is legally valid. 292 Kan. 776, Syl. ¶ 1.

Thus, based on the plain language of K.S.A. 2015 Supp. 22-3716(c)(1)(E), our Supreme Court's holdings in *McKnight*, and our Supreme Court's holdings in *Ehrlich* establish that after revoking a defendant's probation, the district court lacked discretion to recalculate the defendant's criminal history score. As a result, despite Resto-Isaac's argument to the contrary, the law in effect when the district court initially sentences a defendant to probation and imposes the defendant's original underlying sentence controls a defendant's criminal history score in that criminal case. In turn, it is readily apparent that Resto-Isaac has used his current appeal from the revocation of his probation to challenge his original sentence contrary to our holding in *Wilkerson*, 38 Kan. App. 2d at 734. Simply put, because Resto-Isaac's criminal history score was part of his original underlying sentence, he needed to make any challenges to his criminal history score within 14 days after his initial sentence as required under K.S.A. 2020 Supp. 22-3608(c). We therefore lack jurisdiction to consider Resto-Isaac's criminal history challenge as a direct appeal from the district court's decision to lessen his sentence in accordance with K.S.A. 2015 Supp. 22-3716(c)(1)(E) by ordering that his sentence in 16CR1184 run concurrent with his sentences in 16CR504 and 16CR1138.

Because Resto-Isaac has insisted that his current appeal is a direct appeal and not an appeal under K.S.A. 22-3504, Resto-Isaac has abandoned any argument he could have

12

made under K.S.A. 22-3504 regarding his criminal history challenge. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (holding that a point raised incidentally in a brief and not argued therein is akin to failing to adequately brief the issue that results in abandonment). Notwithstanding this abandonment, we note that we also lack jurisdiction to consider Resto-Isaac's criminal history challenge under K.S.A. 22-3504. In short, because the law in effect when the district court initially sentences a defendant to probation and imposes the defendant's original underlying sentence controls a defendant's criminal history score in that criminal case, a defendant is not entitled to recalculation of his or her criminal history score based on a change in the law that occurs after the district court initially sentenced him or her to probation and imposed his or her original underlying sentence. This conclusion is consistent with the plain language of K.S.A. 2020 Supp. 22-3504(c)(1)-(2), which provides that a defendant's sentence is not rendered illegal by a change of law that occurs after a defendant's time to directly appeal has expired. Additionally, this conclusion is consistent with the *McKnight* court's holding that when the district court imposes a lesser sentence on a defendant after revoking that defendant's probation, the district court's lesser sentence is legal as long as it is less severe than the underlying sentence the district court originally imposed. 292 Kan. at 783.

Here, in arguing that his criminal history score was rendered illegal by a change of law, Resto-Isaac has conceded that the district court properly calculated his criminal history score when it initially sentenced him to probation and imposed his original underlying sentence. In his appellant's brief, Resto-Isaac has also conceded that when the district court modified his sentence in 16CR1184 to run concurrent with his sentences in 16CR504 and 16CR1138, it imposed a less severe sentence on him as required under K.S.A. 2015 Supp. 22-3716(c)(1)(E)'s plain language. Thus, Resto-Isaac has effectively conceded that the district court imposed a legal modified sentence on him when it ordered his sentence in 16CR1184 to run concurrent with his sentences in 16CR504 and 16CR1138. Because we have jurisdiction to review only illegal sentences, this concession

13

establishes that even if Resto-Isaac had challenged his criminal history score under K.S.A. 22-3504, we would lack jurisdiction to consider such a challenge.

Appeal dismissed.